### Michael A. HARRIS, Plaintiff

v.

### UNITED STATES of America, Defendant.

### No. CIV. A. 00–5194(JEI).

United States District Court, D. New Jersey.

Nov. 1, 2000.

See also, —— F.Supp.2d ——, 2000 WL 1918724.

Michael A. Harris, Fort Dix, NJ, Plaintiff pro se.

---

## ORDER DISMISSING PETITION

IRENAS, District Judge.

This matter having come before the Court upon petitioner's application for habeas corpus relief pursuant to 28 U.S.C. § 2241, the Court having considered the submission of the petitioner, and it appearing that:

1. Petitioner, Michael A. Harris, is currently incarcerated in the Federal Correctional Institution in Fort Dix, New Jersey.

2. On June 1, 1993, Harris was sentenced in the Eastern District of Virginia to 264 months following his conviction after a jury trial on five counts of the indictment: (i) conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine (21 U.S.C. § 846)[1]; (ii) two counts of distributing of cocaine (21 U.S.C. § 841(a))[2]; (iii) using a communication device in violation of (21 U.S.C. § 843(b)); and (iv) interstate travel to facilitate a conspiracy (18 U.S.C. § 1952(a)(3)). Petitioner received 264 months on the § 846 violation and concur-

rent sentences of 60 months on each of the § 841(a) violations and on the § 843(b) violation, and of 48 months on the § 1952(a)(3) violation. Pursuant to 21 U.S.C. § 841(b)(1)(A)(ii)(II), the maximum sentence for conspiring to distribute more that five kilograms of cocaine is a minimum of ten years and a maximum of life.[3] Obviously, Petitioner's sentence fell within the guideline range.

3. The trial judge, in conformance with the United States Sentencing Guidelines, found by a preponderance of the evidence that petitioner was responsible for 48 kilograms of cocaine based on the testimony of a police officer at the sentencing. This resulted in a starting offense level of 34. U.S.S.G. § 2D1.1(a)(3). The offense level was enhanced by two points for possession of a weapon during the crime, U.S.S.G. § 2D1.1(b)(1), and by two more points for obstruction of justice, apparently based on testimony given by petitioner at the trial. U.S.S.G. § 3C1.1.[4]

4. Petitioner appealed his conviction and sentence which was affirmed by the Fourth Circuit Court of Appeals. *United States v. Harris*, 28 F.3d 1211 (Table), 1994 WL 249449 (4th Cir.1994). A motion pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel was denied by the trial court which denial was affirmed on appeal. *United States v. Harris*, 112 F.3d 511 (Table), 1997 WL 211344 (4th Cir.1997). Harris then filed what he styled a Motion for Appropriate Relief which was again denied by the District and Circuit Courts. *United States v. Harris*, 153 F.3d 723 (Table), 1998 WL 487095 (4th Cir.1998). Petitioner asserts that he re-

---

1. Count One of the Indictment 93–1–NN from the Eastern District of Virginia charges that petitioner conspired "To knowingly, intentionally, willfully and unlawfully distribute in excess of 5 kilograms of cocaine...."

2. Count Nine of the Indictment charges that petitioner "willfully, unlawfully, knowingly and intentionally did distribute approximately 2 ounces of cocaine, ..." in or about May of 1991. Count Ten charges the same crime on

or about August 3, 1992, for 1 ounce of cocaine.

3. The statutory maximum for distributing 1 or 2 ounces of cocaine is twenty years. 21 U.S.C. § 841(b)(1)(C).

4. Petitioner's criminal history category as shown in the judgment of conviction is I. His sentence of 264 months was the exact middle of the sentence range of 235–293 months.

cently filed a petition for leave from the Fourth Circuit to file a successive motion for relief under 28 U.S.C. § 2255. *See* last unnumbered paragraph of 28 U.S.C. § 2255 and 28 U.S.C. § 2244. The requested permission was denied by the Fourth Circuit on September 26, 2000.[5]

5. Harris' petition is an early round in what promises to be a heavy volley of litigation based on the United States Supreme Court decision in *Apprendi v. New Jersey*, —— U.S. ——, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In simple terms, Petitioner argues that his Fifth Amendment rights under the Due Process Clause and his notice and jury trial guarantees of the Sixth Amendment were violated because the finding that he was responsible for 48 kilograms of cocaine was not made by a jury using a "beyond a reasonable doubt" standard of proof, but rather by a trial judge at sentencing using only a preponderance standard. A similar argument could be made with respect to the enhancement for possession of a weapon during the crime.[6] Since challenges to the legality of a federal sentence are generally brought under § 2255, we must first consider the jurisdiction of the court to consider this claim under § 2241.

6. Petitioner claims that he seeks redress from this Court under 28 U.S.C. § 2241 because relief is not available under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2255 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat.

1214 (codified in relevant part as 28 U.S.C. § 2255).

7. As amended by the AEDPA, 28 U.S.C. § 2255 provides that:

> An application for a writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.* (emphasis added).

■ 8. In *In Re Dorsainvil*, 119 F.3d 245, 248 (3d Cir.1997), the Third Circuit held that a petitioner may seek relief pursuant to 28 U.S.C. § 2241 because his § 2255 relief has become "inadequate or ineffective" only under very narrow circumstances. In *Dorsainvil*, the narrow circumstance permitting the petitioner's filing of a petition under § 2241 was a change in the Supreme Court's interpretation of the meaning of "use" under 18 U.S.C. § 924(c), the statute pursuant to which the *Dorsainvil* petitioner had been convicted. *See Dorsainvil*, 119 F.3d at 251.

9. *Apprendi* is a lengthy opinion with two concurring opinions and two dissents which were joined by four justices. This opinion puts into play the issue of where it is proper to draw the line between (i) "sentencing factors," which may be deter-

---

**5.** Because Petitioner is both aware of and has, apparently, exhausted his rights under 28 U.S.C. § 2255, the notice specified by *United States v. Miller*, 197 F.3d 644 (3d Cir.1999), is not required. To the extent that the petition herein might be construed as raising issues other than those arising under *Apprendi*, they are clearly barred and will not be considered in this Order.

**6.** Somewhat ironically, the arguments that *Apprendi* applies to a wide range of decisions made under the U.S.S.G. is given a large boost in the dissent of Justice O'Connor who writes:

> The [*Apprendi*] principle thus would apply ... to all determinate-sentencing schemes in which the length of a defendant's sentence within the statutory range turns on specific factual determinations (e.g. the federal Sentencing Guidelines). * * * The Court appears to hold today, however, that a defendant is entitled to have a jury decide, by proof beyond a reasonable doubt, every fact relevant to the determination of sentence under a determinate-sentencing scheme.

*Apprendi*, 120 S.Ct. at 2391–93. Justice O'Connor goes on to predict, probably correctly, a "flood of petitions" by convicts seeking to reverse their convictions. *Id.* at 2395.

mined at the time of sentencing by a low standard of proof and (ii) "elements of the offense," which must, pursuant to the Fifth and Sixth Amendments, be properly charged in an indictment or information and be found by a jury beyond a reasonable doubt. While it is arguable that prior jurisprudence may have foreshadowed this result,[7] it can hardly be said that a reasonable prisoner would have been required to raise this issue in a timely § 2255 filing made before *Apprendi* was decided. It was even less predictable that a prisoner could have foreseen the dissenting opinion of Justice O'Conner in which she suggested that the *Apprendi* decision could be applied to factual determinations made pursuant to the U.S.S.G. even where the ultimate sentence was below or at the statutory maximum. This Court finds that petitioner's claim is one of the few instances where *Dorsainvil* operates to permit a § 2241 challenge to the lawfulness of a federal sentence. *See United States of America v. Lawrence Brooks*, 230 F.3d 643, 646–48 (3d Cir.2000).

10. In *Apprendi* the defendant fired several shots into the home of an African–American neighbor. He was indicted on a variety of charges and pled guilty to, *inter alia*, two counts charging possession of a firearm for unlawful purposes, N.J.S.A. 2C:39–4a, a second degree offense which normally carries a penalty range of 5 to 10 years. N.J.S.A. 2C:43–6(a)(2). New Jersey statutes permit the imposition of an "extended" term of imprisonment if

> The defendant in committing the crime acted, at least in part, with ill will, hatred or bias toward, and with a purpose

to intimidate, an individual or group of individuals because of race, color, religion, sexual orientation or ethnicity.

N.J.S.A. 2C:44–3(e). The statute specifically provides that the finding of bias necessary for the imposition of an extended term may be made by the trial judge by a preponderance of the evidence. If bias is found by the trial judge in connection with a crime of the second degree, the extended term statute doubles the maximum exposure from ten years to twenty years. N.J.S.A. 2C:43–7(a)(3).

11. The Supreme Court determined that the New Jersey statutory scheme in effect created and defined a series of new crimes the elements of which were the elements of the applicable second degree crime plus an intention to intimidate because of bias towards the victim. These new crimes carried statutory sentences potentially twice as large as those for second degree crimes. In a 5–4 decision, the Supreme Court held that the enhancement statute could be applied only if the indictment specifically charged bias and a jury determined beyond a reasonable doubt that the defendant act with the intent required by N.J.S.A. 2C:44–3(e). *Apprendi*, 120 S.Ct. at 2362–63.

12. In Petitioner's trial the jury found beyond a reasonable doubt that defendant conspired to possess with intent to distribute and in fact distributed more than 5 kilograms of cocaine. This finding exposed the defendant to imprisonment for a minimum sentence of ten years imprisonment and a maximum term of life imprisonment. 21 U.S.C. §§ 846 and 841(a) & (b)(1)(A)(ii)(II).[8] Thus, the actual sentence

---

7. "Our answer to that question was foreshadowed by our opinion in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), ..." *Apprendi*, 120 S.Ct. at 2355.

8. If the indictment had not specified the amount of cocaine, the maximum penalty on a guilty verdict would have been 20 years in prison. 21 U.S.C. § 841(b)(1)(C); *United States v. Rogers*, 228 F.3d 1318 (11th Cir. 2000)(A defendant convicted by jury for pos-

session with intent to distribute crack cocaine, where indictment does not mention a specific amount, can be sentenced only under 21 U.S.C. § 841(b)(1)(C).); *United States v. Doggett*, 230 F.3d 160 (5th Cir.2000)(same); *United States v. Angle*, 230 F.3d 113 (4th Cir.2000)(same); *cf. Jones*, 526 U.S. at 239, 119 S.Ct. 1215 (serious bodily injury in carjacking is distinct statutory element, not mere penalty enhancement during sentencing).

of 264 months did not exceed the statutory maximum of life imprisonment.

13. Traditionally (prior to November 1, 1987, the advent of the U.S.S.G.) a sentencing judge could consider a wide variety of factors relating either to the defendant himself (remorse, character, family circumstances, potential for rehabilitation, likelihood of recidivism etc.) or to the circumstances (other than the actual elements) of the crime itself (violence, usage of weapons, extent of the gain or profit to the defendant, extent of the loss of the victim, abuse of official position, injury or harm to the victim, leadership or limited role in the offense, etc.). The trial judge's discretion was almost unfettered, and there was very little fact finding subject to any standard of proof in the usual sense. So long as the ultimate sentence did not exceed the statutory maximum or go below any statutory minimum (of which there were many fewer than today), the trial judge had extremely wide discretion. By codifying almost all of the factors traditionally considered by sentencing judges, providing for formalized fact finding, and assigning values to the various sentencing factors, the U.S.S.G. may have severely limited judicial discretion, but in some sense they actually increased the due process accorded to a defendant. Prior to 1987 a theoretical felon might know the maximum sentence to which his contemplated criminal actions exposed him, but not the actual sentence. Today, the Guidelines can inform the interested potential felon in what range his actual sentence might fall.

14. When Harris was sentenced, the trial judge held a hearing and determined by a preponderance of the evidence that petitioner was responsible for 48 kilograms of cocaine, used a gun, and obstructed justice. Under the U.S.S.G., these factors resulted in a significantly increased sentence, but a sentence within the statutory range. These are also factors which a preGuideline trial judge would (and should) have considered. As noted by Justice Stevens:

We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—by imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case. See, *e.g.*, *Williams v. People of State of New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

*Apprendi*, 120 S.Ct. at 2358. In *United States v. Angle*, 230 F.3d 113 (4th Cir.2000) Angle was tried under § 841(a) on an indictment which did not mention the quantity of drugs involved. The Fourth Circuit properly held that under *Apprendi* the defendant could not be sentenced to more than 20 years as provided in 21 U.S.C. § 841(b)(1)(C). However, the court also held:

Where no drug quantity is charged in the indictment or found by a jury, but a jury has found a violation of § 841(a), the standard statutory term of imprisonment is not more than twenty years. *See* § 841(b)(1)(C). In these cases, where the quantity is not charged, the drug amount is still a proper aggravating or mitigating factor to be considered by the judge in determining a sentence at or below the statutory maximum sentence. *See Apprendi*, —— U.S. —— n. 11, 120 S.Ct. at 2359 n. 11. Thus, the judge still may determine the amount of drugs by a preponderance of the evidence for the purposes of calculating the offense level and relevant conduct under the United States Sentencing Guidelines. However, if the determination of the judge with respect to the quantity leads to a suggested sentence range ... that is greater than the twenty year statutory maximum, the judge only may sentence at or below the statutory maximum penalty, i.e.

not more than twenty years. *See* U.S.S.G. § 5G1.1(a).

*United States v. Angle* at 123.

■ 15. We hold that provisions of the Guidelines which enhance a sentence within the statutory maximum based on offense or offender characteristics which are not elements of the offense do not contravene the majority's holding in *Apprendi,* even if the trial judge uses the preponderance standard of proof in making the relevant factual determinations.[9] Of course, this holding presumes that all the statutory elements of the crime which establish the maximum sentence have properly been put before a jury and that the defendant has been found guilty beyond a reasonable doubt.[10] The sentencing enhancements provided in the Guidelines are just a codification of factors traditionally considered by common law trial judges. The adoption of a preponderance standard of proof for establishing the factual predicates for these enhancements probably offers a defendant more due process protection than historically available during sentencing.

■ 16. In this matter the indictment specifically charged that the defendant's violation of § 841(a) and § 846 involved more that five kilograms of cocaine. Thus the trial court acted correctly when it sentenced the petitioner to a term within the range provided in § 841(b)(1)(A) following a determination of the actual amount by a preponderance of the evidence at sentencing and enhancing the penalty as provided in the Guidelines.

17. This Court will issue a certificate of appealability because the applicant has made a substantial showing that he may have been denied a constitutional right. *See* 28 U.S.C. § 2253(c)(2). As noted earlier, Justice O'Conner's dissent suggests that *Apprendi* does implicate fact finding under the Guidelines even where the ultimate sentence falls below the statutory maximum. And Chief Judge Becker has recently written that:

> *Apprendi's* implications for the legitimacy of a variety of sentencing schemes, including the United States Sentencing Guidelines, have stirred enormous controversy, portending that the number of *Apprendi* challenges by incarcerated defendants will soon reach tidal proportions. While I ultimately conclude that we need not and should not reach the *Apprendi* issue in this case, the merits of that point seem to me to be close.

*United States v. Mack,* 229.F.3d 226, 235–36 (3d Cir.2000) (Becker, C.J., concurring) (internal citations omitted).

18. Rule 1(b) of the Rules Governing Section 2254 Cases ("Habeas Rules") permits application of these Rules to proceedings under § 2241. Rule 4 of the Habeas Rules provides for preliminary consideration by the trial judge and dismissal before answer if it "plainly appears" that the petitioner is not entitled to relief. It might seem inconsistent to dismiss this case under Rule 4 while also granting a certificate of appealability. However, because the issue raised is fundamentally legal in nature, the proper resolution is "plain" to this Court, even if the result might be disputed by other judges.

9. We note that the Third Circuit has held that where the enhancing factor results in a significant increase in the applicable sentence a higher standard of proof may be required. *United States v. Kikumura,* 918 F.2d 1084 (3d Cir.1990).

10. Prior to *Apprendi* many indictments charging violations of 21 U.S.C. § 841(a) or § 846 did not allege a particular quantity of drugs. Notwithstanding this absence the Fourth Circuit (and many others) treated drug quantity

as a sentencing factor and applied the sentences provided in § 841(b)(1)(A) and (B) rather than (C). In the Fourth Circuit this practice continued even after the Supreme Court decision in *Jones. See* discussion in *Angle* at 121. We emphasize that the Order in the instant matter does not purport to deal with the application of *Apprendi* to cases in which the indictment does not specify the drug amount and the sentence imposed is based on the terms specified in § 841(b)(1)(A) or (B).

Based upon the foregoing and good cause shown,

**IT IS** on this 1st day of November, 2000,

**ORDERED THAT:**

1. Petitioner's application to proceed without prepayment of fees or costs or security, in accordance with 28 U.S.C. § 1915(a) is hereby **GRANTED;**

2. Petitioner's application for habeas corpus relief pursuant to 28 U.S.C. § 2241 is hereby **DENIED;** and

3. This Court will issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).