Charles BROWN, Petitioner,

v.

Jake MENDEZ, Warden, Respondent.

No. 3:CV–01–0754.

United States District Court,
M.D. Pennsylvania.

Oct. 17, 2001.

As Amended Oct. 25, 2001.

Charles Brown, White Deer, PA, pro se.

Kate L. Mershimer, U.S. Attorney's Office, Harrisburg, PA, for Jake Mendez.

### MEMORANDUM

VANASKIE, Chief Judge.

On April 30, 2001, Charles Brown, an inmate confined at the Allenwood United States Penitentiary, White Deer, Pennsylvania ("USP–Allenwood"), brought this habeas corpus proceeding pursuant to 28 U.S.C. § 2241 to challenge the validity of a life sentence imposed on December 8, 1994 by the United States District Court for the Southern District of Florida. Brown contends that his sentence is invalid under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the jury was not delegated the authority to decide beyond a reasonable doubt whether he was responsible for the distribution of at least 50 grams of cocaine base, the threshold amount upon which to premise a maximum prison term of life. Because Brown has failed to show that the procedure established by Congress in 28 U.S.C. § 2255 for asserting a collateral challenge to the validity of a sentence imposed by a federal court is inadequate or ineffective in the circumstances presented here, his § 2241 habeas corpus petition will be dismissed.

### BACKGROUND

On January 27, 1994, a grand jury in the Southern District of Florida returned a one-count indictment against Brown, charging him with unlawful distribution of "a mixture and substance containing a detectible amount of cocaine, in the form of cocaine base, in violation of Title 21, United States Code, Section 841(a)(1)." [1] The indictment did not charge a specific amount of cocaine base attributable to Brown's narcotic-trafficking activities. Following a jury verdict of guilty on the indictment, Brown was sentenced to a term of life imprisonment. According to Brown, this sentence was based upon the sentencing court's determination that Brown was responsible for the distribution of at least 50 grams of cocaine base. [2]

---

1. A copy of the indictment is appended to Brown's *pro se* § 2241 petition.

2. Section 841(b)(1)(A) of title 21 U.S.C. authorizes a maximum prison term of life if a defendant is responsible for the distribution of "50 grams or more of a mixture or substance ... which contains cocaine base." A maximum prison term of twenty (20) years is authorized where the amount of cocaine base attributable to the defendant is less than 5 grams. *See* 21 U.S.C. § 841(b)(1)(C). Where the defendant is responsible for between 5 grams and 49 grams of cocaine base, the

Brown's conviction and sentence were affirmed on his direct appeal in an unpublished opinion. *United States v. Brown,* 100 F.3d 970 (11th Cir.1996). The Supreme Court denied Brown's petition for a writ of certiorari on February 18, 1997. 519 U.S. 1140, 117 S.Ct. 1013, 136 L.Ed.2d 890 (1997).

On November 26, 1996, Brown moved for a modification of his sentence pursuant to 28 U.S.C. § 2255. That motion was denied.

On September 18, 1997, Brown filed a motion to "correct sentence pursuant to recent decision rendered by the Eleventh Circuit." On July 20, 1998, he moved to correct his sentence pursuant to 18 U.S.C. § 3582(c)(2).[3] The motions were considered collectively by the trial court as a motion pursuant to 28 U.S.C. § 2255, and denied by Order dated May 30, 2000.

Brown then filed an application with the Eleventh Circuit, requesting leave to file a second or successive § 2255 motion to raise the following claims:

(1) The government's failure to prove drug amount to the jury beyond a reasonable doubt violated due process; (2) the district court was without jurisdiction to sentence Brown pursuant to 21 U.S.C. § 841(b)(1)(A) due to deficiencies in the indictment; (3) Brown's prior state drug convictions were used improperly by the sentencing court to enhance his sentence; and (4) the government's failure to allege drug amount in the indictment and prove that amount to the jury beyond a reasonable doubt violated Brown's equal protection rights.[4]

Brown's claims were based upon *Apprendi.* By Order filed on March 26, 2001, the Eleventh Circuit denied the application for leave to file a second or successive § 2255 motion, finding that Brown had failed to make the requisite showing that *Apprendi* established " 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court.' "[5]

On April 30, 2001, Brown turned to this Court for relief by filing a petition under § 2241. Brown's § 2241 petition asserts the identical claims presented to the Eleventh Circuit in his application for leave to file a successive § 2255 motion. By Order entered May 31, 2001, the respondent was directed to answer the habeas corpus petition. The respondent timely answered the petition on June 20, 2001, and Brown filed a traverse on July 5, 2001. This matter is ripe for disposition.

**DISCUSSION**

The respondent asserts that Brown cannot challenge the validity of his sentence by filing in the court having jurisdiction over Brown's custodian a § 2241 petition. Instead, argues the respondent, Brown must utilize the procedures established by

---

statutory maximum is 40 years' imprisonment. 21 U.S.C. § 841(b)(1)(B).

**3.** Section 3582(c)(2) pertains to a modification of a sentence where the United States Sentencing Commission lowers the applicable sentencing range after the defendant has been sentenced.

**4.** The block quote is taken from the decision of the Eleventh Circuit attached to Brown's *pro se* habeas corpus petition.

**5.** In 1996, Congress, through the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214, amended

§ 2255 to restrict the filing of successive collateral challenges to convictions and sentences. Pertinent here is the requirement that "[a] second or successive motion must be certified as provided in [28 U.S.C. § 2244] by a panel of the appropriate court of appeals to contain . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255, ¶ 8. An appellate court's denial of authorization to file a second or successive § 2255 motion is not appealable. 28 U.S.C. § 2244(b)(3)(E).

28 U.S.C. § 2255 for seeking relief in the sentencing court, and must therefore meet the restrictions for obtaining relief under that congressional grant of collateral review of federal court convictions and sentences.

■ Indeed, "the usual avenue for federal prisoners seeking to challenge the legality of their confinement" is a § 2255 motion in the sentencing court.[6] *In re Dorsainvil*, 119 F.3d 245, 249 (3d Cir. 1997). As a general rule, a § 2255 motion "supersedes habeas corpus and provides the exclusive remedy" to one in custody pursuant to a federal court conviction. *Strollo v. Alldredge*, 463 F.2d 1194, 1195 (3d Cir.), *cert. denied*, 409 U.S. 1046, 93 S.Ct. 546, 34 L.Ed.2d 497 (1972). "Section 2241 'is not an additional, alternative or supplemental remedy to 28 U.S.C. § 2255.'" *Myers v. Booker*, 232 F.3d 902, 2000 WL 1595967, at *1 (10th Cir. Oct.26, 2000) (citing *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir.1996)).

■ Only if it is shown that a § 2255 motion "is inadequate or ineffective to test the legality of . . . detention," may a federal inmate resort to § 2241 to challenge the validity of the conviction or sentence. "It has long been the rule of this circuit that 'the remedy by motion [under § 2255] can be "inadequate or ineffective to test the legality of . . . detention" only if it can be shown that some limitation of scope or procedure would prevent a Section 2255 proceeding from affording the prisoner a full hearing and adjudication of his claim of wrongful detention.'" *United States v. Brooks*, 230 F.3d 643, 648 (3d Cir.2000)

(citing *United States ex rel. Leguillou v. Davis*, 212 F.2d 681, 684 (3d Cir.1954)); *see also Application of Galante*, 437 F.2d 1164, 1165 (3d Cir.1971) (per curiam) (same). It is the petitioner's burden to prove that the remedy afforded by § 2255 is inadequate or ineffective. *Reyes–Requena v. United States*, 243 F.3d 893, 901 (5th Cir.2001) (citing *Pack v. Yusuff*, 218 F.3d 448, 452 (5th Cir.2000)).

■ A petitioner cannot meet this burden by showing that a prior § 2255 motion has been denied. *In re Davenport*, 147 F.3d 605, 608 (7th Cir.1998); *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir.), *cert. denied*, 488 U.S. 982, 109 S.Ct. 533, 102 L.Ed.2d 565 (1988); *Litterio v. Parker*, 369 F.2d 395, 396 (3d Cir.1966) (per curiam). Moreover, the limitations on obtaining relief under § 2255 imposed by the AEDPA do not establish the inadequacy or ineffectiveness of the remedy. *See United States v. Barrett*, 178 F.3d 34, 50 (1st Cir.1999)("A petition under § 2255 cannot become 'inadequate or ineffective,' thus permitting the use of § 2241, merely because a petitioner cannot meet the AEDPA 'second or successive' requirements. Such a result would make Congress's AEDPA amendment of § 2255 a meaningless gesture."), *cert. denied*, 528 U.S. 1176, 120 S.Ct. 1208, 145 L.Ed.2d 1110 (2000); *Davenport*, 147 F.3d at 608 ("Congress did not change [the 'inadequate or ineffective'] language when in the Antiterrorism Act it imposed limitations on the filing of successive § 2255 motions. The retention of the old language opens the way to the argument that when the new limitations prevent the prisoner from obtaining relief un-

6. 28 U.S.C. § 2255, in pertinent part, provides:

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to [section 2255], shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which

sentenced him, or that such court has denied him relief, *unless it appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.* (Emphasis added.)

The underlined part of the statutory language is sometimes referred to as § 2255's "savings clause."

der § 2255, his remedy under that section is inadequate and he may turn to § 2241. That can't be right; it would nullify the limitations."); *Dorsainvil,* 119 F.3d at 251 ("We do not suggest that § 2255 would be 'inadequate or ineffective' so as to enable a second petition to invoke § 2241 merely because that petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255."). Thus, a denial of permission to file a successive § 2255 motion, in itself, does not render § 2255 relief ineffective or inadequate. *See Moore v. Reno,* 185 F.3d 1054, 1055 (9th Cir.1999) (per curiam) (concluding that a habeas petitioner may not avoid the limitations imposed on successive petitions by styling his petition as one pursuant to § 2241 rather than § 2255), *cert. denied,* 528 U.S. 1178, 120 S.Ct. 1214, 145 L.Ed.2d 1115 (2000).

■ Indeed, the denial of permission to file a second or successive § 2255 motion divests a district court of jurisdiction to entertain another, similarly based, § 2255 motion. 28 U.S.C. § 2244(a). Furthermore, a decision by the court of appeals denying permission to file a second or successive application is not appealable. 28 U.S.C. § 2244(b)(3)(E). To allow a person to file a collateral challenge in the district of confinement that is barred in the sentencing court would render nugatory these congressional attempts to promote finality in criminal cases.

Brown asserts that his claims fall within a narrow exception to the general prohibition against § 2241 petitions to challenge federal convictions or sentences recognized by our Court of Appeals in *Dorsainvil, supra.* In *Dorsainvil,* the court held that a federal prisoner barred from using a § 2255 motion under the AEDPA standards for successive motions could resort to a § 2241 petition if the prisoner "had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate ...." 119 F.3d at 251.[7] The court stressed that the holding was a "narrow one" based on the unusual circumstance of a Supreme Court precedent decriminalizing conduct that the petitioner could not have presented in his first § 2255 proceeding. *Id.* at 251–52.

Fundamental to the decision in *Dorsainvil* was the fact that the petitioner may be actually innocent of the crime charged. In this case, Brown has failed to present any allegations suggesting that he was not responsible for the distribution of at least 50 grams of cocaine base. Brown's failure to articulate any facts disputing the trial court's determination as to drug quantity makes his reliance on *Dorsainvil* suspect.

---

7. In *Dorsainvil,* the court was concerned that the petitioner could not benefit from the Supreme Court's ruling in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which held that a defendant could not be convicted of using a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(2) absent evidence of active employment of the firearm in connection with a drug transaction. Claiming that at the time of his conviction active employment of a firearm was not required to prove use of a firearm in relation to a drug trafficking crime and that there was insufficient evidence to show active employment, Dorsainvil asserted that he was convict-
ed for conduct that was determined in *Bailey* not to be illegal. Dorsainvil, however, had already pursued one § 2255 motion before the opinion in *Bailey* was issued, and he had not raised the issue decided in *Bailey.* His second § 2255 motion did not fall within the AEDPA exceptions for a successive § 2255 motion because *Bailey* did not announce a new rule of constitutional law, but merely interpreted the applicable statute. The court held that under these unique circumstance a federal prisoner barred from using a § 2255 motion under the AEDPA standards for successive motions could resort to a § 2241 petition.

■ Furthermore, *Dorsainvil* was based on a type of Supreme Court holding that was not contemplated by the congressional limitations on second or successive § 2255 motions. Congress has allowed exceptions to the general ban on successive § 2255 motions for newly discovered evidence that exonerates the defendant and new rules of constitutional law made retroactive to cases on collateral review by the Supreme Court. At issue in *Dorsainvil* was the retroactive application of the Supreme Court's statutory construction of the elements of a crime. In *Dorsainvil*, the petitioner was arguably innocent, but had no right to review under § 2255. The holding in *Apprendi* does not fall within *Dorsainvil*'s narrow exception to the general rule that § 2255 is the exclusive avenue for asserting a collateral challenge to the validity of a sentence. First, *Apprendi* did not de-criminalize the conduct at issue in this case. And second, *Apprendi* did not construe an ambiguous criminal statute; it announced a new rule of constitutional law. *See In re Turner,* 267 F.3d 225, 226 (3d Cir.2001).

The Third Circuit, as well as other courts, have recognized that congressional concerns with the finality of convictions are not offended when a prisoner's § 2241 petition is based upon a "retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a non-existent crime." *Reyes–Requena,* 243 F.3d at 904. Such a holding does not announce a new rule of constitutional law that has the potential to be applied retroactively to cases on collateral review. Under the gatekeeping provisions of § 2255, a person arguably innocent of criminal conduct as a result of an intervening change in the elements of the crime charged could not obtain access to a federal court to seek relief.

By way of contrast, Congress has afforded a forum for defendants like Brown who claim that a new rule of constitutional law established by the Supreme Court redounds to their favor. To be sure, for defendants like Brown who have already pursued a § 2255 motion, the announcement of a new rule of constitutional law does not automatically open the federal courthouse doors. The defendant must make a *prima facie* showing to the appropriate appeals court that the new rule was "made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255, ¶ 8. *See generally In re: Turner, supra,* 267 F.3d at 226. But this limitation is simply an extension of the pre-AEDPA general rule that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[8] By requiring that the Supreme Court make

---

**8.** Thus, even before the AEDPA a defendant whose conviction was final usually could not benefit from a new rule of constitutional law pronounced by the Supreme Court. In *Teague,* the Court acknowledged two exceptions to the general rule that a new constitutional holding would not be applicable to cases on collateral review:

"First, a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' Second, a new rule should be applied retroactively if it requires the observance of 'those procedures that ... are implicit in the concept of ordered liberty.'"

489 U.S. at 307, 109 S.Ct. 1060. The second exception is "reserved for watershed rules of criminal procedure." *Id.* at 311, 109 S.Ct. 1060. To fall within *Teague's* second exception, "a new rule must meet two requirements: Infringement of the rule must 'seriously diminish the likelihood of obtaining an accurate conviction,' and the rule must ' "al-

the new rule of constitutional law applicable to cases on collateral review, Congress balanced the strong interest in finality of criminal convictions with the concern that the Court be able to determine that those exceptional holdings which "alter our understanding of the 'bedrock procedural elements' essential to the fairness of a proceeding," *Tyler*, at 2483, be made applicable to those persons who have already exhausted the § 2255 remedy. This interest in finality is more compelling where, as here, the prisoner has already pursued one collateral challenge to a conviction and sentence. In such a situation, Congress has determined that the interest in finality may be overcome only if the Supreme Court has determined, through direct holding or by decisions that "logically permit no other conclusion than that the rule is retroactive," *id.* at 2486 (O'Connor, J., concurring), that a person who has already pursued a § 2255 motion may seek the benefit of a new rule of constitutional law. The forum provided by Congress in which a defendant may present the argument that the new rule has been made applicable to the petitioner by the Supreme Court is the court of appeals having jurisdiction over the court of conviction. The fact that the appeals court determines that the new rule of constitutional law has not been made retroactive to cases on collateral review does not mean that the § 2255 remedy is "inadequate" or "ineffective." It simply means that a new rule of constitutional

law is not of such extraordinary importance as to have prompted the Supreme Court to determine (directly or by inescapable logical application of prior precedent) that the finality of a conviction or sentence should yield to another round of litigation. In this event, the defendant's detention under precedent pre-existing the new rule is simply not wrongful.

The Court had recognized that interests of finality outweigh automatic retroactive application of every new rule of constitutional law. *Teague*, 489 U.S. at 309, 109 S.Ct. 1060 ("Application of constitutional rules not in existence at the time a conviction becomes final seriously undermines the principle of finality which is essential to the operation of our criminal justice system."). Congress has applied that principle in requiring that before a second or successive § 2255 motion be filed based on a new constitutional rule the Court determine that the rule should be applied retroactively to cases on collateral review. Congress has afforded a forum for obtaining a determination as to whether the defendant has made a *prima facie* showing that the new rule has been made retroactive to collateral cases by the Supreme Court. If such a *prima facie* showing is made, then the defendant has the opportunity to litigate the question of whether Supreme Court precedent has indeed been made retroactive to collateral cases by the Supreme Court.[9] Thus, § 2255 continues to afford a prisoner a " 'full hearing and

---

ter our understanding of the *bedrock procedural elements* " ' essential to the fairness of a proceeding." *Tyler v. Cain*, — U.S. —, —, 121 S.Ct. 2478, 2484, 150 L.Ed.2d 632 (2001) (emphasis in original). The Supreme Court has stated that it is "unlikely that many such components of basic due process have yet to emerge." *Teague*, 489 U.S. at 313, 109 S.Ct. 1060; *see also Tyler*, at 2484 n. 7 (reiterating that "it is unlikely that any of these watershed rules 'ha[s] yet to emerge' ").

**9.** The difference between the Court of Appeals' decision to allow the filing of a second or successive § 2255 motion based upon a new rule of constitutional law and the trial court's decision on whether the movant has shown that the rule has been made applicable to cases on collateral review by the Supreme Court is explained in *Tyler*, — U.S. at — n. 3, 121 S.Ct. at 2481 n. 3.

adjudication of his claim of wrongful detention.'" *Brooks*, 230 F.3d at 648.[10]

■ The fact is that a *new* rule of constitutional law does not necessarily render detention effected under the *old* rule wrongful. Only if the new rule is of such a dimension as to apply retroactively to cases on collateral review is the detention under the old rule arguably wrongful, and where a prisoner has already exhausted one collateral attack on the conviction or sentence, a Supreme Court determination of retroactive application, either explicit or by compelled implication, is required to open the doors of the district court to the prisoner.

■ In this case, the Eleventh Circuit determined that *Apprendi* has not been made retroactive to cases on collateral review by the Supreme Court. The Third Circuit has also concluded (a) that the Supreme Court did not make *Apprendi* retroactive to cases on collateral review, and (b) that a conclusion that *Apprendi* is entitled to retrospective application is not dictated by prior Supreme Court precedent. *Turner*, 267 F.3d at 231. To hold that § 2241 provides a procedural mechanism for litigating *Apprendi* issues foreclosed from review under § 2255 would, in the words of our Court of Appeals, "effectively eviscerate Congress's intent in amending § 2255." *Dorsainvil*, 119 F.3d at 251. In short, Brown cannot invoke § 2241 to initiate another round of litigation over his sentence when the Eleventh Circuit has found that he is not entitled to litigate the *Apprendi* issues in a second or successive collateral challenge to an otherwise final sentence.[11]

10. In *Harris v. United States,* 119 F.Supp.2d .458, 461 (D.N.J.2000), the Court found that an *Apprendi* claim "is one of the few instances where Dorsainvil operates to permit a § 2241 challenge to the lawfulness of a federal sentence." In reaching this conclusion, the district court focused on the fact that a prisoner could not have anticipated the holding ·in *Apprendi*. The district court failed to consider, however, the difference between the factual underpinning of *Dorsainvil* and that presented when a § 2241 petition raise an *Apprendi* issue that does not claim that the finding of drug quantity was erroneous. Nor did the Court consider the fact that new rules of constitutional law are generally not applicable on collateral review, meaning that a new rule does not render detention under the old rule wrongful. Finally, it did not address the fact that § 2255 does provide a forum to litigate the retroactivity question. For these reasons, *Harris* is not persuasive. It should also be noted that *Harris* is apparently the only opinion to have found that an Apprendi claim falls within the savings clause of § 2255.

11. It should be noted that the Eleventh Circuit recently held that *Apprendi* cannot be applied to initial § 2255 motions, finding that *Apprendi* fails to fall within the limited exceptions to the general rule established in *Teague* that a new rule of constitutional law does not apply retroactively on collateral review. *See McCoy v. United States*, 266 F.3d 1245, 1257–58 (11th Cir.2001). Thus, Brown could not benefit from *Apprendi* even had he been granted leave to file a second or successive § 2255 motion in the sentencing court. The holding in *McCoy* is consistent with the decisions from the Fourth, Eighth and Ninth Circuits, *United States v. Sanders*, 247 F.3d 139, 147 (4th Cir.2001); *Dukes v. United States*, 255 F.3d 912, 913 (8th Cir.2001) ("*Apprendi* presents a new rule of constitutional law that is not of 'watershed' magnitude and 'consequently, petitioners may not raise *Apprendi* claims on collateral review' "); *United States v. Moss*, 252 F.3d 993, 997 (8th Cir.2001); *Jones v. Smith*, 231 F.3d 1227, 1236 (9th Cir.2000), as well as the overwhelming majority of district court opinions to have addressed the issue. *See Moss*, 252 F.3d at 997 n. 4 (collecting cases); *Levan v. United States*, 128 F.Supp.2d 270, 275–78 (E.D.Pa.2001). Although our Court of Appeals has not yet addressed the issue directly, its recent *en banc* decision in *United States v. Vazquez*, —— F.3d ——, 2001 WL 1188250, slip. op. at 9–21 (3d Cir. Oct. 9, 2001), may presage its conclusion that application of *Apprendi* in collateral challenges to the validity of a conviction or sentence is barred by the *Teague* general rule of non-retroactivity. In *Vazquez*, the court ap-

## CONCLUSION

*Apprendi* did not set a precedent sufficient to warrant a determination that the AEDPA restrictions on second or successive collateral challenges to a final conviction and sentence render the § 2255 remedy inadequate or ineffective. *See McDougall v. United States*, No. 3:CV–01–1165, slip. op. at 6–7 (M.D.Pa. Oct. 15, 2001); *United States v. Franco–Montoya*, No.Crim. 89–33, 2001 WL 649471 (D.Me. June 8, 2001); *Moya–Reyes v. Mallisham*, No. Civ. A. 4:01–CV–0576, 2001 WL 1116276, * 3 (N.D.Tex. Sept.13, 2001)("Moya–Reyes' claims based on *Apprendi*, while raising a potential defect in the manner in which she was sentenced, do not assert the sort of defect that can support a claim under the savings clause of § 2255."). Accordingly, Brown's § 2241 petition will be dismissed.[12] An appropriate Order follows.

plied plain error standards in holding that an *Apprendi* violation did not require that the conviction be set aside on direct appeal. Other courts, in holding that *Apprendi* may not be applied in a prisoner's first § 2255 proceeding, have considered it significant that, on direct appeal, *Apprendi* violations have been analyzed under plain error or harmless error standards. *See Sanders*, 247 F.3d at 150 ("Further supporting the view that *Apprendi* does not rise to the level of a watershed change in criminal procedure is the fact that the majority of the federal circuit courts have subjected *Apprendi* claims to harmless and plain error review."); *Levan*, 128 F.Supp.2d at 278 (reasoning of courts that have applied harmless error analysis to *Apprendi* violations supports the decision not to retroactively apply *Apprendi* in a § 2255 proceeding). There is no need at this time to address the question of whether *Apprendi* falls within an exception to the *Teague* bar on non-retroactivity as it is clear that, in the context of *Apprendi* claims, § 2241 is not an available procedural mechanism for avoiding the gatekeeping requirements of § 2255.

12. Brown's petition will be dismissed without prejudice so that he is not foreclosed from pursuing relief in the future in the event that the Supreme Court makes *Apprendi* retroactive to cases on collateral review. *See Turner*, *supra*, 267 F.3d at 231.